IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STANLEY WOFFORD,  )
　　　　　　　　　　)
　　　Plaintiff,　　　)
　　　　　　　　　　)
　　v.　　　　　　　 )
　　　　　　　　　　)　Case No. 3:03-cv-725-JPG
RICK SUTTON, et al.,  )
　　　　　　　　　　)
　　　Defendants.　　)
　　　　　　　　　　)
　　　　　　　　　　)

## REPORT AND RECOMMENDATIONS

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the Motion for Partial Summary Judgment filed by the Defendants Rick Sutton, Mark Pierson, John Evans, and Terri Bryant, on October 15, 2007 (Doc. 99). For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED**, that judgment be entered in favor of Defendants Evans and Pierson on the claims brought pursuant to 42 U.S.C. § 1983, that Plaintiff's request for injunctive relief be **DENIED**, and that the Court adopt the following findings of fact and conclusions of law:

### FINDINGS OF FACT

Plaintiff, an inmate in the Illinois Department of Corrections ("IDOC"), filed his *pro se* complaint on November 5, 2003. He alleged that Defendant Sutton refused to provide him with a vegan diet as required by his African Hebrew Israelite religion, despite his IDOC classification as a participant in the religion (Doc. 1). Plaintiff also alleged that he filed two grievances (dated

April 16, 2003, May 21, 2003) asking for the vegan diet, but the grievances were denied. Plaintiff sought damages and injunctive relief ordering Defendant Sutton to provide him with a vegan diet. Plaintiff filed three amended *pro se* complaints in March 2006 (Docs. 35, 36, and 37).

*Amended Complaint*

In April 2006, counsel entered appearances for Plaintiff (Docs. 40 and 41), and on May 9, 2006, Plaintiff, through counsel, filed a fifth amended complaint (Doc. 52), adding Mark Pierson, John Evans, and Terri Bryant as Defendants. The amended complaint raises three claims: 1) a claim for damages under 42 U.S.C. § 1983 for denial of Plaintiff's First and Fourteenth Amendment rights to practice his religion, 2) a claim for damages under 42 U.S.C. § 1983 for denial of Plaintiff's Fourteenth Amendment guarantee of equal protection, and 3) a claim for damages for violations of The Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Amended Complaint also requests equitable relief, "including a permanent injunction to enjoin Defendants from interfering with Plaintiff's and other African Hebrew Israelites' right to practice their religion freely, including, but not limited to, provision of nutritionally adequate vegan meals that meet the requirements of the African Hebrew Israelite religion" (Doc. 52, p. 12).

*Motion for Partial Summary Judgment*

On August 15, 2007, Defendants filed a motion for partial summary judgment, arguing that two Defendants--Mark Pierson and John Evans--are entitled to summary judgment in their favor on the claims brought pursuant to 42 U.S.C. § 1983 because neither had personal involvement in the alleged constitutional violations, and both are entitled to qualified immunity.

Defendants also argue that they are entitled to judgment in their favor on the claim for injunctive relief because Plaintiff is no longer incarcerated at Pinckneyville Correctional Center (Doc. 99).

In response, Plaintiff argues that Defendants are not entitled to summary judgment in their favor because genuine issues of material fact exist as to whether Defendants Evans and Pierson were personally involved in the alleged constitutional deprivations and whether they are entitled to qualified immunity. Plaintiff's response does not address the claim for injunctive relief (Doc. 100).

Defendants filed a reply in which they reiterate their arguments regarding Defendant Pierson's and Defendant Evans's lack of personal involvement in allegedly depriving Plaintiff of his constitutional rights, and they point out that Plaintiff failed to respond to the arguments regarding injunctive relief (Doc. 102).

*Undisputed Facts*

Defendant Pierson was employed as the Warden at Pinckneyville Correctional Center from October 2002 to September 29, 2003 (Doc. 99, Exh. C, p. 9). Defendant Evans was employed as the Warden at Pinckneyville from December 2003 to December 2005 (Doc. 99, Exh. B, p. 10). Defendants Pierson and Evans testified that while Warden at Pinckneyville each of them followed a policy by which they designated responsibility for reviewing and signing grievances (Doc. 100, Exh. 2, pp. 27-35; Exh. 3, pp. 34-36). Defendant Evans testified that he would not review a prisoner's grievance even when the same inmate had filed multiple grievances about the same issue (Doc. 100, Exh. 3, pp. 34-35, 40).

Both Pierson and Evans identified Assistant Warden Julius Flagg as the officer they designated to review grievances (Doc. 99, Exh. B, p. 37; Exh. C, pp. 31-33). In a deposition

taken by the Plaintiff, Assistant Warden Flagg testified that both Defendants Pierson and Evans delegated signature authority to him to review and approve or deny grievances involving Pinckneyville programs, including grievances involving the chaplaincy department. Assistant Warden Flagg also testified that he did not recall discussing the Plaintiff's grievances with either Defendant Pierson or Defendant Evans (Doc. 102, Exh. A, pp. 30-37).

Plaintiff was an inmate at Pinckneyville Correctional Center from February 2003 until June 20, 2007 (Doc. 99, Exh. A). He was scheduled to be released on mandatory supervised release on November 11, 2007 (Doc. 99, Exh. A, ¶ 2). Plaintiff has been a member of the African Hebrew Israelite religion since 1998 (Doc. 100, Exh. 1., p. 6). One of the basic tenets of the African Hebrew Israelite religion is adherence to a vegan diet, which requires eating no animal byproducts and no artificial or synthetic foods (Doc. 100, Exh. 1, pp. 7, 9).

In accordance with these beliefs, Plaintiff requested a vegan diet in 2003 shortly after he was transferred to Pinckneyville. Defendant Sutton, the chaplain at Pinckneyville, did not respond to Plaintiff's initial informal requests. Thus, Plaintiff filed a grievance on April 16, 2003, formally requesting a vegan diet in accordance with his religion (Doc. 100, Exh. 1, pp. 16-19; Exh. 5). On May 2, 2003, the grievance officer prepared a report recommending that Plaintiff's grievance dated April 16, 2003, be denied. The report included a response from the Chief Administrative Officer concurring with the grievance officer's conclusion. The report was signed "Mark Pierson" (Doc. 100, Exh. 5). Defendant Pierson stated in deposition, however, that he did not personally review or make the final decision to deny Plaintiff's grievance. He testified that the grievance report was actually signed by a designee. Defendant Pierson could not, however, identify the exact individual who signed his signature to the grievance report (Doc.

99, Exh. C., pp. 32-35; Doc. 100, Exh. 2, pp. 32-35).

Plaintiff filed another grievance regarding the denial of his request for a vegan diet on May 21, 2003. Plaintiff's grievance was denied in a grievance officer's report dated July 3, 2003. The concurring signature, "Mark Pierson," appears on the report (Doc. 100, Exh. 6). Defendant Pierson testified that he did not personally review or make the final decision to deny the grievance, and that the report was signed by a designee with signature authority. He could not identify the individual who signed his name to the grievance report (Doc. 99, Exh. C, pp. 33-35; Doc. 100, Exh. 2, pp. 33-35).

In support of his request for a vegan diet, Plaintiff sent an affidavit directly to Defendant Pierson on August 27, 2003, attaching documentation of his membership in the African Hebrew Israelite religion (Doc. 100, Exh. 1, p. 25; Exh. 7). Defendant Pierson testified that he could not recall having seen that document (Doc. 100, Exh. 2, pp. 39-40).

The Administrative Review Board of the Department of Corrections affirmed the denial of the May 21 grievance by letter dated September 29, 2003. A copy of the letter was sent to Defendant Pierson and to Plaintiff's file. The letter is marked "received" by the Pinckneyville Correctional Center Record Office. The received date is illegible (Doc. 100, Exh. 6).

Defendant Sutton approved Plaintiff's request for a vegan diet by a memorandum directed to Assistant Warden Julius Flagg dated May 12, 2004. The warden (not identified by name) was copied on this memo (Doc. 100, Exh. 8). Defendant Evans sent Plaintiff a memorandum on May 19, 2004, informing him of the procedures for receiving an alternative diet tray (Doc. 100, Exh. 9).

On June 20, 2004, Plaintiff filed a grievance complaining of inadequacies in the vegan

diet he received. The grievance officer recommended denying Plaintiff's grievance in a report dated July 19, 2004, and signed "John Evans" under the Chief Administrator's Response (Doc. 100, Exh. 10). Defendant Evans testified in deposition that he did not personally make the final decision to deny the grievance, and that the signature on the grievance is not his signature, but that of a designee (Doc. 99, Exh. B. pp. 35-36). Defendant Evans could not identify the individual who signed "Defendant Evans" on the grievance report (Doc. 99, Exh. B, pp. 35-36; Doc. 100, Exh. 3, pp. 35-36).

Plaintiff submitted a grievance dated July 25, 2004, referring to seven affidavits he sent to Defendant Evans and other IDOC officials on July 21, 2004, describing the "practice" at Pinckneyville of staff depriving prisoners of their meals. The grievance officer's report denying the grievance includes the signature "John Evans" (Doc. 100, Exh. 11). Defendant Evans testified that he did not personally make the final decision to deny the grievance, did not sign the grievance himself, and could not identify the specific individual who signed it on his behalf (Doc. 100, Exh. 3, pp. 38-39).

On February 22, 2005, Plaintiff submitted a grievance regarding the fact that the vegan diets served at Pinckneyville were not prepared in a manner consistent with the dictates of his religion. Plaintiff's grievance was denied in a report dated March 14, 2005, and signed "John Evans" (Doc. 100, Exh. 13). Defendant Evans testified that he did not personally review or make the final decision to deny the grievance. He also testified that someone with signature authority other than himself signed the grievance report (Doc. 99, Exh. B, pp. 39-40; Doc. 100, Exh. 3, pp. 39-40). Defendant Evans was copied on a letter from the Administrative Review Board of the Illinois Department of Corrections dated April 1, 2005, in which the Board affirmed

the denial of Plaintiff's February 22 grievance (Doc. 100, Exh. 14).

## CONCLUSIONS OF LAW

*Standard of Review*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Ruffin-Thompkins v. Experian Information Solutions, Inc., 422 F.3d 603, 607 (7th Cir. 2005); Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc., 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970). See also Lawrence v. Kenosha County, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ballance v. City of Springfield, Illinois Police Department, 424 F.3d 614, 616 (7th Cir. 2005); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004). See also Anderer v. Jones, 385 F.3d 1043, 1064 (7th Cir. 2004).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). See also Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Packman v. Chicago Tribune Co., 267 F.3d 628, 637 (7th Cir. 2001); Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997).

The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001) (quoting Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). A showing of a mere factual disagreement between the parties is insufficient; the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. See Outlaw, 259 F.3d at 837. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (quoting Logan, 96 F.3d at 978); see also Tolle v. Carroll Touch, Inc., 23 F.3d 174, 178 (7th Cir. 1994) ("a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment"). The issue raised must also be "genuine," meaning that "sufficient evidence" in

favor of the non-moving party exists such that a jury court render a verdict in their favor. Outlaw, 259 F.3d at 837 (quoting Anderson, 477 U.S. at 249). "A 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Outlaw, 259 F.3d at 837 (citations omitted). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

*Personal Involvement*

"The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001) (quoting Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001)). A defendant is personally responsible "if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Chavez, 251 F.3d at 652. Thus, liability can attach without the defendant directly participating in the constitutional deprivation. Supervisory liability will be found, however, only where the supervisor, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." Id. at 651 (quoting Lanigan v. Vill. of E. Hazel Crest, Ill., 110 F.3d 467, 477 (7th Cir. 1997)). "Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." Chavez, 251 F.3d at 651 (quoting

Jones v. City of Chicago, 856 F.2d 985, 992-93 (7th Cir. 1988)). "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." Id.

The Illinois Administrative Code provides that a grievance officer shall review all formally-submitted grievances weekly. See 20 Ill. Admin. Code §504.830(a).

> The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer. The Chief Administrative Officer shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances.

20 Ill. Admin. Code §504.830(d). The Code provides, "Unless otherwise specified, the Director or Chief Administrative Officer may delegate responsibilities stated in this Subpart to another person or persons or designate another person or persons to perform the duties specified." 20 Ill. Admin. Code §504.805(a).

Defendants Pierson and Evans argue that neither of them can be held personally responsible for the alleged deprivation of Plaintiff's constitutional rights because neither of them were involved in denying Plaintiff his requested vegan meals. The undisputed facts indicate that Defendant Pierson did not personally review Plaintiff's grievances dated April 16, 2003, and May 21, 2003, despite the presence of his signature on the grievance forms, and likewise that Defendant Evans did not personally review Plaintiff's grievances dated June 20, 2004, July 25, 2004, and February 22, 2005. Based on these facts, Defendants argue that judgment should be entered in favor of Defendants Pierson and Evans because neither personally participated in depriving Plaintiff of his constitutional rights.

In response, Plaintiff points to the deposition testimony of Defendants Pierson and Evans

in which both defendants indicate they delegated responsibility for reviewing grievances, but could not identify the actual person or persons who approved denial of the grievances with their signatures. Plaintiff presents no additional evidence that either Pierson or Evans had knowledge of the denial of vegan meals, but instead makes an argument that the very practice of delegating responsibility for reviewing grievances itself constituted a reckless disregard for Plaintiff's constitutional rights, thereby conferring liability on Defendants Pierson and Evans for "turning a blind eye" to the deprivation.

In reply, Defendants argue that Defendants Pierson's and Evans's practice of delegating authority to review grievances does not constitute reckless disregard of Plaintiff's constitutional rights because prison officials are permitted by the Illinois Administrative Code to delegate those responsibilities. Defendants also point out that Plaintiff's argument that Defendants failed to identify the person to whom responsibility was delegated is erroneous because both Defendants testified in deposition that Assistant Warden Julius Flagg was that designee. Defendants further state that Plaintiff deposed Julius Flagg, who testified that he was designated by both Wardens Pierson and Evans to review and sign grievances with their signatures, and that he did not report to either Defendant Pierson and Evans about Plaintiff's grievances against Defendant Sutton.

By proffering deposition testimony that neither Defendant Pierson nor Defendant Evans was personally involved in denying Plaintiff's requests for a vegan diet, Defendants have met their initial burden of producing evidence that demonstrates the absence of a genuine issue of material fact. The burden then shifts to the Plaintiff to produce evidence demonstrating the existence of a genuine issue of material fact. The Court concludes that the evidence Plaintiff proffers is insufficient to demonstrate a genuine issue of material fact for trial.

Defendants present evidence indicating that Defendants Pierson and Evans did not review or sign Plaintiff's grievances, and therefore that they had no knowledge of the alleged constitutional deprivations. They argue therefore that neither Pierson nor Evans were liable for the alleged constitutional deprivations of their subordinates. Having so established, the burden shifts to Plaintiff to show, with supporting evidence, that Defendants Pierson and Evans did have knowledge of the alleged constitutional deprivations sufficient to hold them liable for the actions of their subordinates. Under Seventh Circuit law, Plaintiff may do so by showing that Defendants, with knowledge of the deprivations, directed, approved, condoned, facilitated, or turned a blind eye to the conduct. Plaintiff has proffered no evidence that either Pierson or Evans had personal knowledge of the alleged conduct and no evidence that either directed, approved, condoned, facilitated, or turned a blind eye to it.

Instead of producing additional evidence to show that Defendants had personal knowledge of the alleged constitutional deprivations, Plaintiff implies that the delegation to Assistant Warden Flagg to review grievances was improper. On the contrary, such a delegation is clearly allowed under the Illinois Administrative Code. Plaintiff then emphasizes that neither Defendant Pierson nor Evans could identify the individual who actually signed the grievances denying Plaintiff's various requests. In making this argument, Plaintiff ignores the fact that both Defendants Pierson and Evans testified that each designated Assistant Warden Julius Flagg to review grievances, instead focusing on the fact that neither Defendant Pierson nor Evans could identify, over three years later, the specific person or persons who signed their signatures to the forms. The court finds disingenuous the Plaintiff's omission of the fact that Julius Flagg was the appointed designee.

Plaintiff has raised a factual question as to who did sign the grievances, by showing that neither Defendant Pierson nor Evans could identify with certainty the individual who signed the specific grievances written by Plaintiff. Both Pierson and Evans testified, however, that Assistant Warden Julius Flagg was the prison official to whom both designated the responsibility for reviewing grievances. In the face of evidence that neither defendant knew of the alleged constitutional deprivation and that both had designated the authority to review grievances to Assistant Warden Julius Flagg, this factual question does not present a genuine issue for trial as identification of the signatory is not necessary to prove that Pierson and Evans did not sign the grievances. See Outlaw, 259 F.3d at 837 ("irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute"). To meet his burden, Plaintiff would have to produce evidence that Defendants Pierson and Evans had knowledge that their subordinates were denying Plaintiff vegan meals in violation of the constitution and that they directed, approved, condoned, facilitated, or turned a blind eye to the violation. Plaintiff's argument that the policy of designation itself constituted a reckless disregard for Plaintiff's constitutional rights fails because the argument does not take into account that to be held liable a supervisor must first have knowledge of a deprivation. Plaintiff provides no evidence to demonstrate Pierson and Evans had knowledge of a deprivation, and no evidence that they directed, approved, condoned, facilitated, or turned a blind eye to a deprivation. Thus, Plaintiff has not met his burden of demonstrating a genuine issue of fact for trial. Defendants are also entitled to judgment as a matter of law because Plaintiff has failed to prove an essential element of the constitutional violation for which he bears the burden of proof at trial. See Celotex, 477 U.S. at 323. Accordingly, the undersigned **RECOMMENDS** that summary judgment be granted in favor of

Defendants Pierson and Evans on Plaintiff's section 1983 claims because no genuine issue of material fact exists as to whether they were personally responsible for depriving Plaintiff of any constitutional right, and they are entitled to judgment as a matter of law.

*Qualified Immunity*

Qualified Immunity protects government officials who perform discretionary functions from civil liability. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a plaintiff to defeat a qualified immunity defense, he must first prove that his constitutional rights were violated, and second that the constitutional right was "clearly established" in case law at the time of the alleged violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Kiddy-Brown v. Blagojevich, 408 F.3d 346, 352 (2005); Spiegla v. Hull, 371 F.3d 928, 940 (7th Cir. 2004). "Although the privilege of qualified immunity is a defense, the plaintiff carries the burden of defeating it." Mannoia v. Farrow, 476 F.3d 453, 457 (7th Cir. 2007).

As explained above, Plaintiff has not met his burden of proving that Defendants Pierson and Evans were personally involved in violating his constitutional rights. Likewise, Plaintiff has not overcome Pierson's and Evans's assertion of qualified immunity because he has not proven that they violated his constitutional rights. See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Having failed to establish that neither Defendant Pierson nor Evans violated his constitutional rights, Plaintiff has therefore failed to defeat the assertion of qualified immunity. Accordingly, the undersigned **RECOMMENDS** that judgment be entered in favor of Defendants Pierson and Evans on the section 1983 claims against them on issue of qualified immunity.

*Injunctive Relief*

Plaintiff seeks a permanent injunction ordering Defendants to provide him and other African Hebrew Israelites with nutritionally adequate vegan meals (Doc. 1, p. 9).  The parties agree that Plaintiff is no longer incarcerated at Pinckneyville Correctional Center and was scheduled to be released on November 11, 2007.  Defendants argue, therefore, that they currently have no control over the Plaintiff's diet.  Accordingly, they contend, summary judgment on this question should be granted in their favor.  Plaintiff does not address this issue in his response in opposition to the motion for summary judgment.

> An opposing party has an obligation to respond to a motion for summary judgment.
>
> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2) (effective December 1, 2007).  See also Heft v. Moore, 351 F.3d 278, 283 (7th Cir. 2003) (summary judgment is proper when plaintiff's case consists only of "factually unsupported claims;" when faced with evidence presented by moving party, plaintiff cannot rest upon pleadings alone, but must demonstrate specific facts that indicate existence of "genuine issue for trial").

Article III of the Constitution restricts federal courts from adjudicating matters that do not present actual cases or controversies.  See Allen v. Wright, 468 U.S. 737, 750 (1984). Central to the case or controversy requirement is the doctrine of standing which requires that a plaintiff demonstrate a concrete and particularized  "injury-in-fact" that is actual or imminent, not merely conjectural or hypothetical; show a causal connection between the injury and the

conduct complained of; and show a likelihood that the injury will be redressed by a decision in his or her favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992).

Plaintiff here alleges that he was denied vegan meals, which are a tenet of his religion, in violation of his constitutional rights. He seeks an order of the Court directing Defendants to provide him and other African Hebrew Israelites with vegan meals. Because Plaintiff is no longer incarcerated at Pinckneyville, he cannot demonstrate an on-going injury, the first Lujan factor. Plaintiff also cannot demonstrate that an injunction ordering Defendants to provide him with vegan meals will redress his grievance, the third Lujan factor, because Defendants no longer have control over Plaintiff or his diet. Further, Plaintiff has provided no evidence that he will be incarcerated at Pinckneyville in the future and that he will again be denied vegan meals. Thus, Plaintiff does not have standing under Lujan. Based on this lack of standing and Plaintiff's failure to respond to the claim for injunctive relief, the undersigned **RECOMMENDS** that summary judgment be granted in favor of all Defendants on the request for injunctive relief.

### PENDING MOTION TO STRIKE DEFENDANTS' PROPOSED ORDER

Currently pending before the Court is Plaintiff's Motion to Strike Defendants' Proposed Order for Summary Judgment (Doc. 101). Plaintiff argues that the proposed order submitted by Defendants should be stricken because it erroneously contemplates entry of judgment in favor of all defendants on all issues in the case. Plaintiff points out that the Defendants' motion for summary judgment is limited to the section 1983 claims against Defendants Pierson and Evans. The Court agrees. Thus, Plaintiff's Motion to Strike the Proposed Order for Summary Judgment (Doc. 101) is **GRANTED**.

CONCLUSION

Therefore, for the reasons set forth above, it is **RECOMMENDED** that the Court adopt the foregoing findings of fact and conclusions of law, that the Motion for Partial Summary Judgment (Doc. 99) be **GRANTED**, that judgment be entered in favor of Defendants Pierson and Evans on the section 1983 claims, and that Plaintiff's request for injunctive relief be **DENIED**. If this Report and Recommendation is adopted by the District Judge, the following claims and parties will remain: 1) a claim under 42 U.S.C. § 1983 against Defendants Sutton and Bryant for denying Plaintiff's First and Fourteenth Amendment rights to practice his religion, 2) a claim under 42 U.S.C. § 1983 against Defendants Sutton and Bryant for denying Plaintiff's Fourteenth Amendment guarantee of equal protection, and 3) a claim against Defendants Sutton, Bryant, Pierson, and Evans for violating RLUIPA.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 16, 2008**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**